UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DAMON S. LEWIS, | ) |
|     Petitioner, | )  No. 6:23-CV-153-REW |
| v. | ) |
| G. SWANEY, Warden, | )  MEMORANDUM OPINION |
| | )  AND ORDER |
|     Respondent. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Damon Lewis seeks habeas corpus relief from a prison disciplinary conviction. *See* DE 1 (Petition). The warden responds that the Bureau of Prisons ("BOP") honored Lewis's due process rights throughout the proceedings. *See* DE 17 (Response). Lewis has replied in further support of his petition, *see* DE 19 (Motion for Writ of Habeas Corpus, treated here as a reply), rendering this matter ripe for decision.

I

While confined at a federal prison in Arkansas in April 2021, Lewis enrolled in the BOP's Residential Drug Abuse Program ("RDAP"). *See* DE 17 at 1. By December 2021, Lewis had received a formal warning because of his behavior and drug use. *See id*. That same month, Lewis was also cautioned that he must stop "attempting to monopolize" the time of RDAP specialist Fenner. *See id*. Nonetheless, in March 2022 Lewis was found lurking near Fenner and leaving her long notes. *See* DE 1-1 at 1 (Incident Report). When RDAP staff interviewed Lewis about his continued behavior, he admitted to having inappropriate feelings towards Fenner. Lewis was cautioned that his behavior must cease and that he would be charged with stalking if it did not. Nonetheless, Lewis then attended an RDAP meeting led by Fenner for an inmate group of which

1

Lewis was not a part. *See* DE 17-1 at 2-3 (Decl. of Disciplinary Hearing Officer Curtis Glasgow). When Lewis attempted to attend a second such meeting in April 2022, he was ordered to leave and then was formally charged with Stalking, a Code 225 disciplinary offense. *See id* at 3.

During disciplinary proceedings Lewis did not call any witnesses or present any evidence. *See id*. at 3-4. At a hearing before the Disciplinary Hearing Officer ("DHO") on April 20, 2022, Lewis did not formally admit his guilt, but implicitly acknowledged his behavior when he stated "I apologize. I'm not in the business of jeopardizing anyone's job or making anyone feel uncomfortable." *See* DE 17-1 at 23 (Disciplinary Hearing Officer Report). At the close of the hearing, the DHO told Lewis that he would find him guilty of the offense; that sanctions would include the loss of good conduct time; and that he could appeal within twenty days. *See id*. at 5. The DHO issued his written report fourteen days later on May 4, 2022. The DHO Report states that it was delivered to Lewis on May 19, 2022. *Id*. The BOP expelled Lewis from the RDAP on May 6, 2022, following his disciplinary conviction. *See* DE 17 at 3 (Response).

On May 13, 2022, Lewis signed a "sensitive" grievance to be filed with the South Central Regional Office ("SCRO") regarding his expulsion from the RDAP. Lewis claimed, in essence, that it was the RDAP clinical team's fault that he had stalked Fenner because they did not move him to another part of the facility after his obsessive behavior began. *See* DE 17-1 at 41-42 (Request for Administrative Remedy). On May 17, 2022, two days before he received the DHO Report, Lewis signed a separate appeal to SCRO of the DHO's disciplinary decision. In this appeal Lewis asserted that the DHO's Report was due within fifteen working days after the hearing, but that he had not received a copy of it. On that basis alone Lewis sought expungement of his disciplinary conviction. *See* DE 17-1 at 40 (Regional Administrative Remedy Appeal).

2

SCRO received both appeals on May 25, 2022, and assigned the same remedy identification number (No. 1125621-R1) to both of them. *See* DE 17-1 at 40, 42. SCRO rejected Lewis's appeals on July 7, 2022, on the ground that not all of the pages he submitted were legible. SCRO advised Lewis that he could resubmit his appeal within fifteen days. *See* DE 1-1 at 2 (Rejection Notice - Administrative Remedy).

Lewis was transferred to the federal prison in Manchester, Kentucky in July 2022. *See* DE 17-2 at 1 (Inmate History). On October 11, 2022, Lewis re-submitted his appeal, this time to the Mid-Atlantic Regional Office ("MARO"). Lewis asserted that the failure to provide him with a copy of the DHO Report violated his rights under the Confrontation Clause by preventing him from challenging the grounds set forth in the Report as a basis for his conviction. *See* DE 1-1 at 3 (BP-10 (Regional)). MARO advised Lewis that this second and separate appeal, submitted four months after his first, was rejected as redundant to his original appeal. MARO advised Lewis that his challenge to his disciplinary conviction would be addressed in his earlier appeal. *See* DE 1-1 at 8 (Rejection Notice).

MARO denied Lewis's pending combined appeals on November 29, 2022. *See* DE 17-1 at 38-39 (Regional Administrative Remedy Appeal – Part B – Response). MARO concluded that sufficient evidence supported Lewis's conviction and that applicable procedures were substantially followed. In particular, MARO acknowledged that Lewis was given a copy of the DHO Report more than fifteen days after the hearing, but concluded that he failed to demonstrate any resulting prejudice. MARO noted that the DHO Report would be amended to state formally that Lewis had denied the charges, but advised him to appeal if he disagreed with its resolution. *See id*. Lewis appealed that decision, re-asserting that he had never received the DHO Report. *See* DE 1-1 at 14-15 (Central Office Administrative Remedy Appeal). The BOP's Central Office denied Lewis's

3

appeal for the same reasons articulated by MARO, reiterating that the DHO Report was late but had been delivered to Lewis, and that the BOP's consideration of his appeal demonstrated a lack of prejudice from the delay. *See* DE 1-1 at 13 (Administrative Remedy No. 1125621-A1, Part B – Response).

## II

In his petition Lewis alleges that he never received a copy of the DHO Report, let alone within 15 days after the DHO hearing, and claims that as a result he was unable to challenge the DHO's decision on the merits. *See* DE 1 at 3-5, 11-12 (Petition). Lewis does not question the DHO's substantive finding that he stalked Fenner or challenge in any other respect the procedures used to convict him. Lewis requests invalidation of his disciplinary conviction, as well as reinstatement into the RDAP, restoration of its incentives, and release from custody. *See id.* at 9. The Court has reviewed the parties' submissions and concludes that Lewis's due process rights were upheld throughout the proceedings. The Court DENIES the petition.

When a prisoner believes that he was deprived of sentence credits for good conduct without due process of law, he may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241. *Preiser v. Rodriguez*, 93 S.Ct. 1827, 1835-36 (1973). Before such credits are taken, due process requires that the inmate be given:

(1) written notice of the charges against the inmate at least 24 hours before the administrative hearing on the charges;

(2) a hearing before an impartial decision-maker;

(3) assistance from a staff member or competent inmate, if the inmate requests one and the inmate will likely be unable to present a defense because the inmate is illiterate or the case is too complex for the inmate to comprehend;

(4) the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

>   (5)     a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 94 S. Ct. 2963, 2978-82 (1974). Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 105 S. Ct. 2768, 2773 (1985). Because the quantum of evidence required to meet that standard is minimal, the reviewing court need not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. Instead, it need only confirm that "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Id*. at 2774 (emphasis added); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013). The BOP, through regulation and internal procedures, has expounded and expanded upon these protections. *See* 28 C.F.R. §§ 541.5 - 541.8; BOP Program Statement ("PS") 5270.09 CN-1 (Nov. 11, 2020).

Lewis predicates his challenge to the disciplinary conviction upon the fifth protection identified in *Wolff*, which requires that he be provided with a copy of the DHO Report. Lewis himself has made conflicting statements about whether he has received the Report. At times, Lewis has suggested that he did receive the DHO Report but that it was delayed. *Cf*. DE 1 at 11 ("I did not receive the DHO Report at the time of the hearing or several months thereafter. … the BOP failed to provide me with a written copy of the DHO's decision and disposition within 15 working days of the DHO's decision, in violation of the BOP policy and federal regulation."); *see also* DE 17-1 at 40 (Regional Administrative Remedy Appeal). At other times, Lewis indicates that he never received the DHO Report at all. *Cf*. DE 19 at 2 (Reply, stating that "[f]or the record, Dec. 4, 2023, is the first time that I, petitioner, Damon Steven Lewis seen a DHO report to incident report #3615386 in 20 months."). The Court will separately address each possible contention.

Without more, neither a DHO's delay in generating a disciplinary report after the hearing nor the inmate's delay in receiving it constitute sufficient grounds to invalidate a prison disciplinary conviction. BOP regulations provide only that "[y]ou will receive a written copy of the DHO's decision following the hearing." 28 C.F.R. § 542.8(h). By its terms, the regulation does not mandate any time frame to create or deliver a copy of the decision to the inmate. The BOP implements the regulation in the applicable Program Statement, which provides that "[t]he DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision." PS 5270.09 CN-1 Ch. 5(h). The Program Statement does create a time frame to provide the inmate with a copy of the DHO Report, but it is not mandatory: the report will "ordinarily" be delivered within fifteen days. The rule therefore "intrinsically contemplates the possibility that prison staff might need additional time to provide an inmate a report copy," and merely delivering a report after the customary time frame does not violate the applicable regulation or Program Statement. *See Craig v. Kizziah*, No. 6:19-CV-141-REW, 2019 WL 7285556, at *4 (E.D. Ky. Dec. 27, 2019), *aff'd sub nom. Craig v. Matevousian*, No. 20-5155, 2020 WL 4516009 (6th Cir. July 17, 2020); *Adams v. Warden, United States Penitentiary at Big Sandy*, No. 7:20-CV-05-WOB, 2020 WL 7233348, at *2 (E.D. Ky. Dec. 8, 2020) ("By its terms, the regulation contemplates that under certain circumstances notice may be delayed, and hence it does not create an inflexible rule demanding compliance within a strict timeframe.").

And the BOP's failure to meet its presumptive 15-day delivery window by a few days does not provide a basis for habeas relief. An agency's failure to strictly comply with its own policies does not violate due process. *Cleveland Bd. of Educ. v. Loudermill*, 105 S. Ct. 1487, 1493 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the

Due Process Clause."). Federal courts have therefore consistently denied habeas relief based solely upon an asserted nonconformity with the procedures set forth in PS 5270.09. *See Craig*, 2019 WL 7285556, at *5 (holding that the "BOP's failure to strictly track its regulations provides no basis for habeas relief") (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995) (noting that BOP regulations are "primarily designed to guide correctional officials in the administration of a prison," not to "confer rights on inmates.") and *Julick v. Snyder-Norris*, No. 16-6652, 2017 WL 5485453, at *2 (6th Cir. Mar. 1, 2017)). This remains true even when the delay is extensive. *Cf. Epps v. Beard*, No. 0:20-CV-44-HRW, 2022 WL 1462762, at *4 (E.D. Ky. May 9, 2022) (denying habeas relief notwithstanding 10-month delay in delivery of DHO Report) (citing *Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (same for 8-month delay)).

Further, Lewis's allegation that he never received a copy of the DHO Report at all is contradicted by both the DHO Report itself, *see* DE 17-1 at 24 (DHO Report, signature of delivering officer J. Thompson), and the declaration of the DHO who conducted the hearing, *see id.* at 5 (Glasgow Decl.). Apart from his blanket statement, Lewis makes no effort to explain his uneven denial or expand upon the factual basis for it. The Court finds the DHO's under-oath declaration more credible, particularly in light of its consistency with the available documentary evidence and the variability of Lewis's statements over time regarding delivery of the DHO Report. *See Pittman v. Fox*, 766 F. App'x 705, 719-23 (10th Cir. 2019) (noting habeas court's assessment that DHO's statements regarding procedures followed during hearing were more credible than those made by the inmate petitioner, and that the district court's factual findings are subject to review only for clear error).

Even if Lewis had not received the report, he fails to allege or demonstrate resulting prejudice; this is a requirement too. To establish a due process violation, a habeas petitioner must

7

demonstrate actual prejudice resulting from the deprivation alleged. *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1722 (1993); *Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (noting that "the DHO's failure to give an inmate a written copy of its decision within ten days should not entitle an inmate to habeas relief so long as the delay had no prejudicial effect on an administrative appeal"). Lewis cannot demonstrate prejudice because a federal inmate that does not possess a copy of a DHO Report may still appeal without it if he identifies the nature of the charges against him and the date of the hearing. *See Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016). And Lewis has never identified what substantive (and meritorious) arguments he was foreclosed from pursuing, relative to the Report, during administrative appeal. Indeed, during the disciplinary process Lewis disclaimed any desire to have the assistance of a staff representative or to call witnesses, and all but admitted that he was guilty of the offense. Without a demonstration of prejudice from any technical lapse, Lewis fails to show entitlement to habeas relief. *Cf. Cook v. Warden, Fort Dix*, 241 F. App'x 828, 829 (3rd Cir. 2007) ("[E]ven if Cook did not receive the DHO's written report within 10 days, pursuant to 28 C.F.R. § 541.17(g), the delay had no prejudicial effect on Cook's administrative appeal and thus does not provide a basis for habeas relief."); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007). In light of the foregoing, the Court will deny Lewis's petition.

As a concluding matter, the Court notes that the BOP removed Lewis from the RDAP because he repeatedly failed to satisfy its program requirements. *See* DE 17-1 at 46 (Administrative Remedy No. 11150055-AI – Part B – Response); DE 17-1 at 49 (Administrative Remedy Regional Appeal – Part B – Response). The DHO did not order Lewis removed from the RDAP as a sanction for his disciplinary conviction. *See* DE 17-1 at 24 (DHO Report). While Lewis seeks reinstatement

8

to the RDAP in his petition, *see* DE 1 at 8, that sanction was distinct from the disciplinary conviction he placed at issue in this proceeding.

Further, participation in the RDAP does not directly affect the duration of a federal prisoner's sentence. *Lopez v. Davis*, 121 S.Ct. 714, 722 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, ... to reduce his term of imprisonment."). The BOP's decision to place or remove a prisoner in the program may thus not be challenged in a habeas corpus proceeding. *See Jiau v. Poole*, 590 F. App'x 689, 690-91 (9th Cir. 2015) (noting that because "successful completion of RDAP does not necessarily result in a reduced sentence," district court erred in concluding that claim challenging expulsion from program was cognizable in habeas); *Orr v. Hawk*, 156 F.3d 651, 653-54 (6th Cir. 1998). Lewis may therefore not challenge his expulsion from the RDAP in this habeas proceeding. *See Clair v. Hendrix*, No. 5:18-CV-20, 2018 WL 6984832, at *6 (N.D.W. Va. Nov. 16, 2018), *report and recommendation adopted*, 2018 WL 6616607 (N.D. W.Va. Dec. 18, 2018) ("Because the decision to remove an inmate from the RDAP program does not affect the duration of his sentence in a constitutionally cognizable way, these courts hold that RDAP expulsion claims may not be redressed through a federal habeas petition."); *see also Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) (holding that 18 U.S.C. § 3625 precludes judicial review of RDAP determinations made under 18 U.S.C. § 3621(e)(2)(B)).

Accordingly, the Court **ORDERS** as follows:

1. The Court **DENIES** Lewis's DE 1 petition for a writ of habeas corpus.

2. The Court **DENIES** Lewis's DE 19 Motion for a writ of habeas corpus (which in essence the Court treats as a reply).

3. The Court will contemporaneously enter an appropriate judgment.

9

4. This matter is **STRICKEN** from the docket.

This the 5th day of August, 2024.

Signed By:
*Robert E. Wier*
United States District Judge